IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CRISPER STANFORD,                    )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )   No. 05-2298 Ml/V
                                     )
CAESARS ENTERTAINMENT, INC.          )
and SHERATON TUNICA CORP.,           )
                                     )
      Defendants.                    )

_____

ORDER DENYING PLAINTIFF'S MOTION TO REMAND

_____

Before the Court is Plaintiff's Motion to Remand, filed May 18, 2005.  Defendants responded in opposition on June 6, 2005.  Plaintiff filed a reply on December 29, 2005, and Defendants filed a sur-reply on January 13, 2006.  For the reasons set forth below, Plaintiff's motion is DENIED.[1]

I.  Procedural Background

This case arises out of Plaintiff's involvement in Defendants' advertising campaign that features a fictional character named "Loose Slot Louie."  On March 18, 2005, Plaintiff filed suit in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, Shelby County, alleging five causes of action under Tennessee statutory and common law.  On April 22,

_____

[1] On April 24, 2006, Plaintiff moved for leave to file a supplemental memorandum in support of his motion for remand.  As the motion to remand has now been resolved, Plaintiff's motion for leave is DENIED as MOOT.

2005, Defendants removed the action to this Court under 28 U.S.C.
§§ 1441 and 1446 on the basis that two of Plaintiff's claims fall
within the scope of the Copyright Act and are thus preempted by
federal law.

### A.  Plaintiff's Allegations

According to the allegations in Plaintiff's complaint,
Defendants are unlawfully utilizing Plaintiff's image, voice,
likeness, and persona in an advertising campaign designed to
promote Defendants' casino gambling business in Tunica,
Mississippi.  The advertising campaign features a fictional
character named "Loose Slot Louie."  Sometime in 2002, Plaintiff
executed a "model release" that granted Park Place Entertainment[2]
permission to use Plaintiff's image, likeness, and voice in the
creation of the "Loose Slot Louie" character.  According to
Plaintiff, the release was not supported by adequate
consideration, and is therefore invalid.  To the extent that the
release is valid, Plaintiff argues, the release "was expressly
limited to those audios, videos and photographs that preceded the
execution of the release."  (Mem. Supp. Mot. Remand 1.)
Plaintiff has not authorized or consented to the "use,
publication or broadcast of any audios, videos or photographs

---

[2] According to Defendants, Park Place Entertainment is the
predecessor entity to Defendant Caesars Entertainment.  (Defs.' Opp.
Mot. Remand, Ex. 1, Decl. Kim Fritz Opp. Pl.'s Mot. Remand ("Fritz
Decl.") ¶ 3.)

that were created subsequent to the execution of the release." (Id. at 2.)

**B.  Defendants' Statement of Facts**

Defendants' factual allegations are based largely on the declaration of Kim Fritz, the Senior Vice President of Marketing for the Mid-South Region of Caesar's Entertainment.  According to Fritz, Plaintiff worked for Defendants, or their related entities or predecessors, from September 2000 through February 2005. Plaintiff held various positions in the marketing department and worked at several of Defendants' properties in Mississippi. Plaintiff also played the part of "Loose Slot Louie" in Defendants' advertising campaign.  (Fritz Decl. ¶¶ 2, 9-10.)

According to Defendants, the advertising campaign and the character of "Loose Slot Louie" were created "by or for Defendants (or their related entities) to promote Defendants' gaming business."  (Id. at ¶ 9.)  The character "has never existed separate and apart from Defendants or Defendants' advertisements[,]" and "Defendants created the overall appearance and style of the 'Loose Slot Louie' character, including the character's dress and speech."[3]  (Id.)  Defendants are the exclusive owners of all copyrights in the television, radio,

---

[3] Plaintiff take issue with Defendants' assertion that they were the sole creators of the "Loose Slot Louie" character.  Plaintiff contends that "the character was not the sole creation of Defendants and is not solely owned by Defendants."  (Pl.'s Reply 2 n.1.)

print, internet, and billboard advertisements featuring the "Loose Slot Louie" character.  (Id. at ¶ 12.)

     According to Defendants, Plaintiff consented to portraying the "Loose Slot Louie" character "at the time of the creation and production of each of the advertisements now at issue." (Defs.' Opp. Mot. Remand 3.)  In support of this assertion, Defendants point to three agreements that Plaintiff purportedly signed in connection with his agreement to portray the "Loose Slot Louie" character.  One of these agreements is the undated "model release" to which Plaintiff refers in his Complaint.  (See Fritz Decl. Ex. C.)  The other two agreements are employment contracts, dated April 15, 2002, and January 23, 2004.  The two-year contracts set forth the terms of Plaintiff's employment as Director of Entertainment of Defendants' mid-south region.  (See id. Exs. A and B ("2002 Employment Agreement" and "2004 Employment Agreement").)  The 2002 Employment Agreement provides that, in addition to Plaintiff's regular salary, Plaintiff "shall also be eligible to receive as additional compensation $10,000 per year, provided Employer has assigned Employee additional duties in connection with the 'Loose Slot Louie' promotional character, [and] such assignment shall be in the sole discretion of Employer." (2002 Employment Agreement ¶ 3(B).)  The 2004 Employment Agreement does not make reference to the "Loose Slot Louie" character; it provides that "[f]or all services to be

rendered by [Plaintiff] pursuant to this Agreement, [Plaintiff] shall receive from Employer a salary at the annual rate of $92,000 . . . .” (2004 Employment Agreement ¶ 3.)

Plaintiff broadly disputes Defendants' recitation of the facts but does not address Defendants' allegations in detail, contending that they are not relevant to the Court's determination of jurisdiction.

**C. Original and Amended Complaints**

Plaintiff's original complaint asserts five causes of action: (1) violation of Tennessee's Personal Rights Protection Act, Tenn. Code Ann. § 47-25-1105; (2) invasion of privacy and/or publicity by misappropriation of image, voice, likeness, and persona; (3) false endorsement; (4) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 <u>et seq.</u>; and (5) civil conspiracy. As to each count, Plaintiff alleges that Defendants have been using and continue to use Plaintiff's image, likeness, voice, and persona, without his consent, in various media outlets to promote their business, products, and services. Plaintiff further alleges that Defendants have “gained great pecuniary benefit” and have been unjustly enriched by their unauthorized use of Plaintiff's image, likeness, voice, and persona, whereas Plaintiff has received no compensation.

In his original complaint, Plaintiff requested compensatory damages in an amount no less than $3,000,000, punitive damages in

an amount no less than $5,000,000, multiple damages, and

attorneys' fees.  Plaintiff also requested:

> 1. That Defendants be ordered to immediately
> cease and desist the use, in any form, [of]
> Plaintiff's image, voice, likeness and/or
> persona, for any and all commercial and
> noncommerical uses, including but not limited to
> product merchandising, television and radio
> commercials, and print, internet and billboard
> advertising;
>
> 2. That Defendants be ordered to undertake a
> program of corrective advertising, included but
> not limited to product merchandising, television
> and radio commercials, and print, internet and
> billboard advertising, as required to remove
> Plaintiff's image, voice, likeness and/or persona
> from Defendants' advertising campaign.

(Compl. ¶ 8.)  In connection with his motion for remand,

Plaintiff filed a First Amended Complaint, which was the same in

all respects as the original complaint except that it did not

include the request for injunctive relief.  Plaintiff explained

the amendment as follows:

> [T]he Defendants contend that Plaintiff seeks
> to enjoin the Defendants from displaying the
> Defendants' alleged copyrighted works.
> Plaintiff denies that the original Complaint
> seeks any such relief.  However, to clarify the
> issue, Plaintiff has filed his First Amended
> Complaint, specifically removing paragraphs one
> (1) and two (2) of his prayer for relief as
> contained in the original Complaint.

(Mem. Supp. Mot. Remand 2 n.1.)  Defendants strenuously object to

the Court's consideration of Plaintiff's amended complaint.  They

argue that since the deleted requests for injunctive relief are

"nothing more than claims concerning the reproduction,

-6-

performance, distribution or display of Defendants' copyrighted work"——and therefore are expressly preempted by the Copyright Act——Plaintiff is attempting to amend his complaint to defeat removal jurisdiction.  (Defs.' Opp. Mot. Remand 9.)  Defendants maintain, however, that even if the Court elects to consider Plaintiff's complaint as amended, the claims are nevertheless preempted by federal copyright law.

## II.  Analysis

### A.  Removal Under the Complete Preemption Doctrine

Pursuant to 28 U.S.C. § 1441(b), a defendant may remove a claim to federal court if it arises under federal law.  The question of whether a claim arises under federal law is "determined by reference to the 'well-pleaded complaint.'" Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986)(citation omitted).  "The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action."  Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 515 (6th Cir. 2003)(quoting Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 943 (6th Cir. 1994)).

The doctrine of complete preemption constitutes a narrow exception to the well-pleaded complaint rule.  Although federal

preemption is typically a defense to a plaintiff's action and does not authorize removal to a federal court, <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987), in some cases, "the pre-emptive force of [federal law] is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987)(quoting <u>Metro. Life Ins. Co.</u>, 481 U.S. at 65).  In <u>Ritchie v. Williams</u>, 395 F.3d 283, 286 (6th Cir. 2005), the Sixth Circuit recently held that the doctrine of complete preemption applies to the federal Copyright Act, noting that "the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law 'within the general scope of copyright' into federal law to be uniformly applied throughout the nation."

In this case, Defendants contend that two of Plaintiff's causes of action, although presented as state statutory or common law claims, actually involve rights and subject matter that fall within the scope of the Copyright Act.  As such, Defendants argue, the doctrine of complete preemption permits the recharacterization of these claims as federal claims, and thus, removal is proper.  Defendants also request that this Court exercise supplemental jurisdiction over the remainder of Plaintiff's state statutory and common law claims.

The two claims that Defendants argue are preempted by federal copyright law are Counts I and II.  Count I states a violation of Tennessee's right of publicity statute, the Personal Rights Protection Act, Tenn. Code Ann. § 47-25-1105, which provides, in pertinent part:

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, . . . without such individual's prior consent, . . . shall be liable to a civil action.

Tenn. Code Ann. § 47-25-1105.  Plaintiff alleges that without his authorization or consent, "Defendants have been using and continue to use Plaintiff's image, likeness, voice and persona in all forms of media, including but not limited to product merchandising, television and radio commercials, and print, internet and billboard advertising to promote their business, products and services." (Compl. ¶ 21.)  Plaintiff further contends that he has received no compensation for Defendants' use, and that despite his demands that Defendants cease using his image, likeness, voice and persona, they "have maliciously and willfully continued such use[.]" (Id. at ¶¶ 24, 25.)

Count II alleges that Defendants' "wrongful use and misappropriation of Plaintiff's image, voice, likeness and persona violates the Restatement of Torts, Second § 652C, which provides, 'One who appropriates to his own use or benefit the

name or likeness of another is subject to liability to the other
for invasion of his privacy.'" (Id. at ¶ 27.)  Again, Plaintiff
contends that he has received no compensation for Defendants'
misappropriation and that Defendants have maliciously and
willfully continued such use despite Plaintiff's demands that
they cease.  (Id. at ¶¶ 31, 32.)

### B.  Copyright Act Preemption

Section 301 of the Copyright Act explains that certain
rights are governed exclusively by federal copyright law.  It
provides, in pertinent part:

> (a)[A]ll legal or equitable rights that are
> equivalent to any of the exclusive rights within
> the general scope of copyright as specified by
> section 106 in works of authorship that are fixed
> in a tangible medium of expression and come within
> the subject matter of copyright as specified by
> sections 102 and 103, . . . are governed
> exclusively by this title.  Thereafter, no person
> is entitled to any such right or equivalent right
> in any such work under the common law or statutes
> of any State.
>
> (b) Nothing in this title annuls or limits any
> rights or remedies under the common law or statutes
> of any State with respect to −
>
> (1) subject matter that does not come within the
> subject matter of copyright as specified by
> sections 102 and 103, including works of authorship
> not fixed in any tangible medium of expression; . .
> . .

17 U.S.C. § 301.  As the Sixth Circuit has explained, "[t]he
Copyright Act is unusually broad in its assertion of federal
authority.  Rather than sharing jurisdiction with the state

courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law 'within the general scope of copyright' into federal law to be uniformly applied throughout the nation." <u>Ritchie</u>, 395 F.3d at 286.

The parties agree that there are two requirements that must be satisfied in order for a state-law claim to be preempted under § 301: (1) the work must come within the scope of the "subject matter of copyright" as set forth in Section 102 and 103 of the Copyright Act; and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the scope of federal copyright protection.  <u>Stromback v. New Line Cinema</u>, 384 F.3d 283, 300 (6th Cir. 2004).

### i.  Subject Matter Requirement

The subject matter requirement of § 301 "is satisfied if a work fits within the general subject matter of § 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection."[4] <u>Id.</u>  Section 102 of the Act provides

---

[4] In his reply brief, Plaintiff informs the Court that he "has diligently searched for the existence of a registration filed in the United States Copyright Office relating to the works in question by Defendants" and has not found a copyright registration relating to the "Loose Slot Louie" advertising campaign.  Accordingly, Plaintiff asserts, "Defendants cannot invoke the jurisdictional statute provided under the Copyright Act without properly following the procedures required by the Act." (Pl.'s Reply 2-3.)  This argument is misplaced. Registration is necessary only as a prerequisite to bringing a claim of copyright infringement.  <u>See</u> 17 U.S.C. § 411.  Whether or not a copyright is registered with the United States Copyright Office has no bearing on the question of preemption under 17 U.S.C. § 301.  <u>Trandes Corp. v. Guy F. Atkinson Co.</u>, 996 F.2d 655, 658 (4th Cir. 1993) ("As nothing more than a jurisdictional prerequisite, § 411(a) does not affect the broad preemptive scope of § 301.")

that copyright protection subsists in "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated."  17 U.S.C. § 102(a).[5]  Works of authorship include, among others, "dramatic works," "motion pictures and other audiovisual works," and "sound recordings."  Id.

Plaintiff contends that the subject-matter requirement for preemption is not satisfied in this case.  He claims that although his image, voice, likeness, and persona are embodied in copyrightable works, these personal traits are not "works of authorship" and thus do not fall within the "subject matter" of copyright law.  Defendants counter that the subject-matter requirement is satisfied because the works of authorship at issue are the advertisements that depict Plaintiff in the role of "Loose Slot Louie"──works that are subject to copyright and that are well within the scope of § 102(a).  The issue for the Court, then, is to determine the actual subject matter of Plaintiffs' right-of-publicity and misappropriation claims in Counts I and II.  Because an individual's persona or likeness is not copyrightable, Plaintiff's claims would not satisfy the subject-matter requirement if, as Plaintiff insists, they involve the unauthorized use or misappropriation of his "persona, image,

_____

[5] "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

likeness and/or voice." As set forth below, however, the Court finds that the claims do not involve the use or appropriation of Plaintiff's personal traits, but rather, the use of copyrightable advertisements featuring a fictional character portrayed by Plaintiff.

The Sixth Circuit has recognized that the right of publicity "is designed to reserve to a celebrity the personal right to exploit the commercial value of his own identity." Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619, 624 (6th Cir. 2000)(examining Kentucky's right-of-publicity statute, which protects a person's name and likeness from commercial exploitation). The court in Apple Corps Ltd. v. A.D.P.R., Inc., 843 F. Supp. 342, 348 (M.D. Tenn. 1993), explained that the legislative history of Tennessee's Personal Rights Protection Act "indicates that the statute was intended to 'create[] an inheritable property right for those people who use their name[s] or likeness[es] in a commercial manner, such as an entertainer or sports figure——someone who uses [his or her] name for endorsement purposes.'"

The subject matter of a claim involving a right to publicity, therefore, "is not a particular picture or photograph of plaintiff. Rather, what is protected by the right of publicity is the very identity or persona of the plaintiff as a human being." Toney v. L'Oreal USA, Inc., 406 F.3d 905, 908 (7th Cir. 2005)(quoting J. Thomas McCarthy, 2 Rts. of Publicity &

Privacy § 11:52 (2d ed. 2004)(emphasis in original)(internal citations and quotations omitted)).[6]  Since a person's image, persona, or likeness is not copyrightable, it does not constitute a work of authorship within the meaning of 17 U.S.C. § 102.  See Toney, 406 F.3d at 910 ("There is no 'work of authorship' at issue in Toney's right of publicity claim.  A person's likeness——her persona——is not authored and it is not fixed.") Accordingly, several courts have held that state-law right-of-publicity claims are not preempted by the Copyright Act.  See, e.g., id.; Downing v. Abercrombie & Fitch, 265 F.3d 994, 1004 (9th Cir. 2001);  Brown v. Ames, 201 F.3d 654 (5th Cir. 2000); Landham, 227 F.3d at 623.

In this case, however, Plaintiff's claims do not involve the exploitation or misappropriation of "the very identity or persona of [Plaintiff] as a human being."  Despite Plaintiff's attempt to characterize his claims as such, it is clear that the claims actually involve Plaintiff's dramatic portrayal of a fictional character named "Loose Slot Louie"——a character featured in

---

[6] The Nimmer treatise on copyright similarly explains that:

> [T]he "work" that is the subject matter of the right of publicity is the persona, i.e., the name and likeness of a celebrity or other individual.  A persona can hardly be said to constitute a "writing" of an "author" within the meaning of the copyright clause of the Constitution.  A fortiori it is not a "work of authorship" under the Act. Such names or likeness does not become a work of authorship simply because it is embodied in a copyrightable work such as a photograph.

1 Nimmer on Copyright § 1.01[B][1][c] at 1-23 (1999), quoted in Downing v. Abercrombie & Fitch, 265 F.3d 994, 1003-04 (9th Cir. 2001).

Defendants' advertisements.  The advertisement campaign features "Loose Slot Louie," not Crisper Stanford.  The fact that Plaintiff is disputing Defendants' use of his image, not as Crisper Stanford, but as Crisper Stanford playing "Loose Slot Louie," makes his case unlike those in which courts have found that federal copyright law does not preempt a state-law right of publicity.

For example, in <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994 (9th Cir. 2001), the plaintiffs were former surfing competitors whose photographs——taken at a 1965 surfing competition——were used in an Abercrombie & Fitch clothing catalog without the plaintiffs' permission.  In <u>Brown v. Ames</u>, 201 F.3d 654 (5th Cir. 2000), several musicians and songwriters brought claims for the tort of misappropriation——which the court described as a "species of the right of publicity or of privacy"——against a record label and music producer for using their names and likenesses on cassettes, compact discs, catalogs, posters and videotapes without their permission.  Finally, <u>Toney v. L'Oreal USA, Inc.</u>, 406 F.3d 905 (7th Cir. 2005), involved a model's claim for the unauthorized use of her photograph in connection with the packaging and promotion of a hair product.

Plaintiff seeks to rely on these cases for support, but because Plaintiff appeared in Defendants' advertisements not as himself, but as a fictional character, the facts of this case are distinguishable.  Instead, Plaintiff's case is more like <u>Fleet v.</u>

CBS, Inc., 50 Cal. App. 4th 1911 (1996), in which two actors brought right-of-publicity claims against CBS, Inc., which owned the distribution rights to a movie in which the actors had appeared.  The plaintiffs in Fleet argued that because they had not been paid the amount owed to them for their work on the movie, CBS had used their names, voices, photographs, and likenesses without permission to promote the videotape release of the film.  The Fleet court held that the actors' performances——once captured on film with their active participation and consent——came within the subject matter of the Copyright Act for preemption purposes.  Specifically, the court noted that "once appellants' performances were put on film, they became 'dramatic work[s]' 'fixed in [a] tangible medium of expression' that could be 'perceived, reproduced, or otherwise communicated' through 'the aid of a machine or device.'" 50 Cal. App. 4th at 1919 (quoting 17 U.S.C. § 102(a)).

Similarly, once Plaintiff willingly dressed up in the "Loose Slot Louie" costume and knowingly appeared as this character in Defendants' advertisements, his performance became a "dramatic work" that was "fixed in a tangible medium of expression" and "perceived, reproduced, or otherwise communicated" through the various media outlets in which Defendants' advertisement campaign was run.  As such, the subject matter of Plaintiff's claims falls within the scope of copyright law, and the first requirement for preemption is satisfied.

-16-

## ii. Equivalency Requirement

Under the second requirement——the "general scope" or "equivalency" requirement——courts apply a "functional test" to determine "whether the state law right at issue is equivalent to any of the exclusive rights under § 106 of the Copyright Act." Stromback, 384 F.3d at 301.  Section 106 guarantees the "exclusive rights" of reproduction, derivation, distribution, public performance, and public display to copyright owners.[7]  17 U.S.C. § 106; Landham, 227 F.3d at 623.  The state law right at issue is equivalent to any of the exclusive rights under § 106 if "the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights." Stromback, 384 F.3d at 301.  "Conversely, if an extra element is

_____

[7] Section 106 provides that:

the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer . . .;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." Id.

Plaintiff insists that he has not brought claims for copyright infringement or any equivalent action; his claims are merely for the unauthorized use of his likeness or persona for commercial purposes. As such, his claims assert a right separate from those protected by the Copyright Act. He relies primarily on the Sixth Circuit's holding in Landham for support.

In Landham, the plaintiff sued Twentieth Century Fox Film Corp. and Galoob Toys, Inc. for false endorsement under the Lanham Act and for violation of his right of publicity under Kentucky law. Landham alleged that the defendants marketed without his permission an action figure toy of the character he portrayed several years earlier in Fox Film's "Predator."[8] The Sixth Circuit held that Landham's right-of-publicity action was not preempted by § 301 of the Copyright Act because it stated "a claim of invasion of personal, state-law rights that are distinct from copyright protection." 227 F.3d at 623. The Court reached this conclusion by making a distinction between preempted and

---

[8] Fox licensed to Galoob the rights to produce and market a line of toys based on the film, in which Landham had played the character of "Billy, the Native American Tracker." Id. at 621-22.

-18-

nonpreempted right-of-publicity claims:

> [Landham] is not claiming the right of publicity in
> order to gain rights in the telecast of his
> performance, or to contest Fox's right to create
> derivative works from its copyrighted work in
> general.  Rather, he claims that the toy evokes his
> personal identity——an inchoate 'idea' which is not
> amenable to copyright protection——to his emotional
> and financial detriment.

Id.

In this case, on the other hand, Plaintiff expressly
challenges Defendants' right to use its copyrighted
advertisements.  Plaintiff's original complaint requests that
"Defendants be ordered to immediately cease and desist the use,
in any form, of Plaintiff's image, voice, likeness and/or
persona, for any and all commercial and noncommercial uses[.]"
(Compl. at 8, ¶ 1.)  A plaintiff may not amend his complaint
after removal solely to defeat federal jurisdiction.  Johnson v.
First Federal Sav. and Loan Ass'n of Detroit, 418 F. Supp. 1106,
1108 (D. Mich. 1976).  Even without the specific request for
injunctive relief, however, Plaintiff's Amended Complaint makes
clear that the right at issue here is Defendants' right to the
"use, publication or broadcast of any audios, videos, photographs
that were created subsequent to the model release."  (Am. Compl.
¶ 17.)  Plaintiff specifically contends in Counts I and II that
he is entitled to punitive damages because, "[d]espite
Plaintiff['s] demands that Defendants cease using Plaintiff's
image, likeness, voice and persona to advertise and promote
Defendants' gaming operations, products and services, Defendants

-19-

have maliciously and willfully continued such use[.]" (Id. at ¶¶ 25, 32.)  Because Plaintiff is claiming a "right of publicity" in order to contest Defendants' continued use of its "Loose Slot Louie" campaign, his reliance on Landham is misplaced.

Moreover, the Court agrees with Defendants that the equivalency requirement is satisfied in this case because Plaintiff's right-to-publicity and misappropriation claims "may be abridged by an act which in and of itself would infringe one of the exclusive rights"——namely, interference with the Defendants' right to reproduce, distribute, or display their copyrighted advertisements.  As the California Court of Appeals explained in Fleet v. CBS, Inc., "[Plaintiff] may choose to call [his] claims misappropriation of right to publicity, but if all they are seeking is to prevent a party from exhibiting a copyrighted work they are making a claim 'equivalent to an exclusive right within the general scope of copyright.'" Fleet, 50 Cal. App. 4th at 1920 (holding that plaintiffs' right-to-publicity claims under state law were preempted by Copyright Act because their claims "seek only to prevent CBS from reproducing and distributing their performances in the film" for which plaintiffs claimed they were not paid).

## III.  Conclusion

As set forth above, both of the requirements for copyright preemption are satisfied as to Plaintiff's claims under Counts I and II.  Accordingly, removal of the entire action is proper

under the complete preemption doctrine and 28 U.S.C. § 1441.

Plaintiff's Motion to Remand is DENIED.

So ORDERED this 1st day of May, 2006.


  /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE